ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### BENTON DIVISION

**DIRECTV, INC.**
**a California corporation,**

           Plaintiff,

    - against -

**GEORGE SCOTT,**

           Defendant(s)

**COMPLAINT** 02-4222-JLF

**Civil No.**

Plaintiff, **DIRECTV, INC.,** ("**DIRECTV**"), brings this action against Defendant(s), GEORGE SCOTT, and hereby seeks injunctive relief and compensatory and statutory damages for Defendant's unlawful purchase, acquisition, employment and use of satellite piracy devices, all of which are primarily designed, produced and/or marketed for the purpose of circumventing the encryption and other signal protection technological measures employed by DIRECTV to prevent the theft of and unlawful access to DIRECTV's satellite television programming

### JURISDICTION

This Court has original federal question jurisdiction and supplemental jurisdiction over this action under the Digital Millennium-Copyright Act, 17 U.S C § 1203, *et seq.*, and the Communications Act of 1934, as amended, 47 U S.C. § 605, *et seq* Alternatively, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (a) (1) by virtue of the complete diversity of citizenship of the parties in an action in which the matter in controversy exceeds the sum or value of $75,000. exclusive of interest and costs.

Plaintiff, DIRECTV, by and through its counsel, LONSTEIN LAW OFFICE, P.C., upon information and belief, alleges as follows:

-1-

## INTRODUCTION

1.   Plaintiff, DIRECTV, operates throughout United States a state-of-the-art satellite entertainment programming service. DIRECTV delivers hundreds of channels of digital entertainment, and informational programming to homes and businesses equipped with specialized digital satellite system equipment. DIRECTV provides different levels of programming based on the particular subscription package that a DIRECTV subscriber purchases. DIRECTV encrypts its satellite transmissions and employs technology specifically designed to limit programming access to only those lawful subscribers who pay for its services. The technology partially relies on "access cards" provided to consumers as components of the digital satellite system equipment and which, upon activation by DIRECTV, decrypt DIRECTV's satellite signals and permit subscribers to view programming.  These access cards are but one of the security measures employed by DIRECTV in order to protect its  programming against unauthorized access ("Pirating").

2  Upon information and belief, Defendant GEORGE SCOTT (hereinafter "Defendant SCOTT"), is an individual who acted in conjunction with third parties, including, but not limited to, manufacturers and suppliers of pirating devices, purchased, acquired, employed other otherwise used said devices specifically to circumvent DIRECTV's encryption access controls to permit the decryption and unauthorized receipt of DIRECTV's television programming

3.   Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant SCOTT is subject to personal jurisdiction in this District by virtue of his intentional purchase, use, employment, installation or other illegal use of pirate devices within this District  Additionally, venue is proper in this District under 28 U.S.C. § 93 (c) because a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

4   DIRECTV is a California corporation with its principal place of business located at 2230 East Imperial Highway, El Segundo, California.

5.   Upon information and belief, Defendant SCOTT is an individual who, resides at 302

South Orange Street, Jonesboro, Indiana 62952, and who is or was a subscriber to the services of DIRECTV, or who is accessing the proprietary signals using a digital satellite dish along with a pirate device from DIRECTV.

## FACTUAL BACKGROUND

### DIRECTV AND THE SATELLITE
### TELEVISION BROADCASTING BUSINESS

6.      DIRECTV has invested billions of dollars to develop a nationwide, state-of-the-art digital satellite entertainment service. DIRECTV delivers television programming to millions of subscribers in the United States equipped with digital satellite system hardware. This hardware consists of a satellite dish, an integrated receiver descrambler ("IRD") and an access card that is necessary to operate the IRD. Through this technology, DIRECTV offers programming including major cable networks, studio movies and special events offered on a pay-per-view basis, local network channels in select areas, and a variety of other sports and special interest programs and packages. DIRECTV has the exclusive right to broadcast via satellite some of these programs

7.      Purchasers of digital satellite system equipment can subscribe to various packages, of DIRECTV programming, for which the subscriber pays a fee. Subscribers can also order pay-per-view events and movies, either by using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

8      DIRECTV sells programming, most of which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters and other programming copyright holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers. In addition, DIRECTV holds exclusive satellite distribution rights in some of the programming and it creates its own original content programming, to which DIRECTV owns the copyright.

## SIGNAL ENCRYPTION

9.     DIRECTV delivers its programming from its earth-based uplink centers which first compress, encrypt and digitize programming before transmitting the signals to multiple satellites located in orbit thousands of miles above the earth.

10     Upon reception by the satellites, the signals are transmitted back to earth, where they can be received by DIRECTV's subscribers homes or businesses which are equipped with digital satellite system dishes and IRDs. Once received by the dish, the signals are transmitted by wire to the IRD. The IRD acts like a computer which processes the incoming signal using a conditional access security device, which, in turn, allows the encrypted signal to be viewed by authorized subscribers.

11     The conditional access security system, which looks much like a credit card, was developed by DIRECTV in conjunction with others to ensure that only lawful customers would be able to view its programming.

12.     After a customer installs the dish, IRD and access card at his home or business, the access card blocks access to DIRECTV programming until the customer purchases one or more programming packages from DIRECTV. When the customer subscribes to a package, DIRECTV electronically activates the subscriber's access card in accordance with that subscription. The access card then acts as a re-programmable microprocessor and uses "smart card" technology to (a) control which DIRECTV programming the subscriber is permitted to view; and (b) capture and transmit to DIRECTV the subscriber's pay-per-view information.

13     Because DIRECTV generates its revenues through sales of subscription packages, it must be able to condition access to programming on the purchase of legitimate subscriptions  Accordingly, DIRECTV devotes substantial resources to the continued development and improvement of its security system.

14.     As is often the case with new technology, almost simultaneously with introduction into the marketplace, modern day pirates engage in the process of breaking through security measures to gain access, without payment, to proprietary signals such as those owned by DIRECTV. As a result, DIRECTV

-4-

has a constant need to modify existing and develop new technologies designed and intended to battle piracy

       15. By circumventing DIRECTV's security measures, pirates gain full access to all of DIRECTV's programming, including pay-per-view events. Because the access cards are the primary security mechanism relied on by DIRECTV, the primary focus of satellite piracy has been modifying and selling "pirate" access cards and selling devices that enable such modification

       16.    But for the employment of "pirate" access cards, only lawfully paying customers of DIRECTV should be able to view its proprietary signals, the combined monthly value of which, if accessed illegally by one person, exceeds tens of thousands of dollars

       17    DIRECTV's ability to attract and retain subscribers, protect and maintain rights to distribute copyrighted programming, and to prevent unnecessary increases in rates charged to lawful customers which result from losses associated with piracy depends on DIRECTV's ability to successfully combat pirates. Despite such security measures, including the civil prosecution of the pirate industry, DIRECTV's business has suffered and continues suffer monumental losses.

## DEFENDANTS' UNLAWFUL ACTIONS

       18.    Upon information and belief, Defendant SCOTT personally uses or used such pirate devices to illegally access the proprietary signals of DIRECTV.

       19.    On information and belief, the pirate device (s) that Defendant SCOTT purchased, or otherwise acquired have only one purpose  the bypassing of DIRECTV's encryption protection to permit the unlawful decryption of DIRECTV's signal and the unauthorized receipt of television programming.

       20.    In conjunction with a law enforcement investigation of an entity doing business as "VECTOR TECHNOLOGIES," (hereinafter "VTEC"), it was documented that Defendant SCOTT acquired, purchased or otherwise obtained pirating device (s), as well as related equipment, specifically designed and modified for, marketed and advertised as enabling unauthorized access to DIRECTV's proprietary signals and defeating electronic countermeasures ("ECMs") employed by DIRECTV., all without payment.

21.     Upon information and belief, Defendant SCOTT purchased one (1) Vector Super Unlooper with SU2 Code, and one (1) Vector Smart Card Emulator from VTEC on or about March 13, 2001.

22.     Upon information and belief, the pirating devices not only allow unauthorized access to DIRECTV's copyrighted proprietary signals, but also restores DIRECTV access cards damaged by ECMs and enables the cards to again allow circumvention of DIRECTV's access control security.

23.     Upon information and belief, Defendant SCOTT uses or used said pirate device (s) with knowledge that the devices are used to circumvent technological measures that effectively control access copyrighted works and that protect the exclusive rights of copyright owners.

24.     Upon information and belief, the pirate device(s) used by Defendant SCOTT serve one primary purpose: they are meant to bypass DIRECTV'S encryption protection and, thus, permit the unlawful decryption of DIRECTV's signal and the unauthorized receipt of television programming.

25.     By acquiring said pirating device (s), Defendant SCOTT has intentionally engaged in the unauthorized decryption and reception of DIRECTV's satellite television programming and electronic communications for financial gain.

26      Defendant SCOTT'S conduct as alleged herein has caused and continues to cause DIRECTV irreparable harm.


COUNT I
VIOLATION OF THE DIGITAL MILLENNIUM
COPYRIGHT ACT (DMCA), 17 U.S.C. § 1201(a)(1)(A)


27.     DIRECTV realleges each and every allegation set forth in Paragraphs 1 through 25, inclusive, and incorporates them by reference herein

28      Defendant SCOTT  is using a pirated DIRECTV card to circumvent DIRECTV's technological measures that control access to copyrighted programming in violation of 17 U.S.C.§ 1201 (a) (1) (A).

-6-

29.     Defendant SCOTT'S acts constituting DMCA violations have been and continue to be performed without the permission, authorization or consent of DIRECTV, its licensees, assigns or any owner of broadcasted copyrighted programming.

30.     Defendant SCOTT'S conduct has caused damage to DIRECTV, and has unjustly enriched Defendant SCOTT in an amount to be proven at trial

31.     DIRECTV's remedy at law is not adequate. Unless restrained by this Court, Defendant SCOTT will continue to violate Section 1201 of the DMCA. Complete protection of DIRECTV's rights should include an injunction, as well as all other remedies available.

COUNT II
VIOLATION OF THE DIGITAL MILLENNIUM
COPYRIGHT ACT (DMCA), 17 U.S.C. § 1201(a) (2), and (b)(1)

32.     DIRECTV realleges each and every allegation set forth in Paragraphs 1 through 30, inclusive, and incorporates them by reference herein.

33.     Defendant SCOTT acquired pirate device (s) in violation of 17 U.S.C. §1201 (a) (2) and 1201(b).

34.     Defendant SCOTT'S pirate device (s) are primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of copyright owners

35.     Defendant SCOTT'S pirate device (s) have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of copyright owners

36     Defendant SCOTT acquired such pirate device (s) with knowledge that they are for use in circumventing DIRECTV's technological access controls and copyright protection.

37     Defendant SCOTT'S acts, which constitute DMCA violations, have been and continue to be performed without the permission, authorization or consent of DIRECTV, its licensees, assigns or any

owner of broadcasted copyrighted programming.

38    Defendant SCOTT has violated §1201 of the DMCA, willfully and for purposes of private financial gain.

39    As a result of the foregoing, DIRECTV is entitled to the greater of its actual damages together with any profits made by Defendant SCOTT that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201 (a)(1) and (2), and (b)(1), pursuant to 17 U.S C. S 1203 (c)(2) and (3)(A), together with costs, disbursements and reasonable attorneys fees incurred herein

## COUNT III
## ASSISTING THE UNAUTHORIZED
## DECRYPTION OF SATELLITE PROGRAMMING IN
## VIOLATION OF 47 U.S.C. §605(a) AND (e) (4)

40.    DIRECTV repeats and realleges Paragraphs 1 through 38, inclusive, and incorporates them by reference herein

41.    Defendant SCOTT received DIRECTV's transmissions, without authorization by DIRECTV and for his own benefit, in violation of 47 U.S C. § 605(a).

42.    Defendant SCOTT acquired, assembled, modified, sold and/or distributed pirate devices knowing or having reason to know that they are primarily of assistance in the unauthorized decryption of direct-to-home satellite services, in violation of 47 U.S.C. § 605 (a) and (e) (4).

43    Defendant SCOTT violated 47 U.S.C. § 605(a) and (e)(4) willfully and for the purposes of direct or indirect commercial advantage or private financial gain.

44.    With full knowledge that DIRECTVS' proprietary signals were not to be received and exhibited by those unauthorized to do so, Defendant SCOTT and/or his agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled DIRECTVS' satellite signals and did receive DIRECTVS' programming at the above-captioned address, or other addresses, presently unknown to Plaintiff,

-8-

at the time of their transmission, willfully and for purposes of direct or indirect commercial advantage or private financial gain

45.  47 U S.C. §605 prohibits the unlawful interception and use of communications such as the transmission for which Plaintiff, DIRECTV, owned or had the distribution rights thereto.

46.  By reason of the aforementioned conduct, Defendant SCOTT willfully violated 47 U.S.C. §605(a).

47.  By reason of Defendant SCOTT'S violation of 47 U.S C. §605 (a), Plaintiff, DIRECTV, has a private right of action pursuant to 47 U.S.C. §605

48.  As a result of Defendant SCOTT'S willful violation of 47 U.S C. §605 (a), Plaintiff, DIRECTV, is entitled to the greater of its actual damages or statutory damages, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii), of up to $110,000.00 as to each pirate device purchased, owned, used, employed, or otherwise acquired by Defendant SCOTT.

49  Pursuant to 47 U.S C. §605, Plaintiff, DIRECTV, is also entitled to an award of full costs, interest and reasonable attorney's fees.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, DIRECTV seeks a judgment against Defendant SCOTT as follows

A.     For a grant of preliminary and permanent injunctive relief restraining and enjoining Defendant SCOTT and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from the following acts

(1)   possessing, purchasing, acquiring or otherwise dealing in any pirate devices, or any other technology, product, service, device, component, or part thereof, including emulators, glitchers, unloopers, and bootloaders, that

(a)   are primarily designed or produced for the purpose of circumventing the

-9-

encryption access control protection contained in the software on DIRECTV's access cards, or any other technological measure adopted by DIRECTV that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

        (b)    have only limited commercially significant purpose or use, the purpose of which is to circumvent DIRECTV's encryption access control protection, or any other technological measure adopted by DIRECTV that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming, or

        (c)    are knowingly acquired by Defendant SCOTT and/or others acting in concert with Defendant for use in circumventing DIRECTV's encryption access control protection, or any other technological measure adopted by DIRECTV that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming, and

        (2)    or in any other way, assembling, modifying, possessing or using any pirate devices knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of direct-to-home satellite services; and

        (3)    in any other way, manufacturing, assembling, possessing, selling, acquiring or otherwise using any electronic, mechanical, or other devices, the design of which renders them primarily useful for the purpose of the surreptitious interception of electronic communications

        B.    For an Order impounding all pirate devices or other circumvention or signal theft devices or equipment in the custody or control of Defendant SCOTT or related entities that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act or 47 U.S.C. § 605.

        C.    Award DIRECTV the greater of its actual damages or statutory damages, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii), of up to $110,000.00 as to each pirate device purchased, owned, used, employed, acquired, re-sold and/or distributed by Defendant SCOTT.

        D.    Award DIRECTV the greater of its actual damages together with any profits made by Defendant SCOTT that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201 (a) (1), (2) and (b) (1), pursuant to 17 U.S.C. S 1203

-10-

(c) (2) and (3) (A)

    E.    For an award of DIRECTV's costs, reasonable attorneys' fees, and investigative fees

    F.    Prejudgment interest on all and damages granted by this Court

    G    Such other and further relief as the Court deems just and proper.


Dated:  October 22, 2002
Ellenville, NY

          **DIRECTV, INC.**

          BY,

          JULIE COHEN LONSTEIN
          SDIL Bar Roll No.  90784647
          LONSTEIN LAW OFFICE, P.C.
          Attorneys for Plaintiff
          1 Terrace Hill, P.O. Box 351
          Ellenville, NY 12428
          (845) 647-8500
          *Our File No   DTV-2IL-S01*